NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
WALDO RODRIGUEZ,                    :
                                    :
                Plaintiff,          :
                                    :   Civ. No. 08-4006 (GEB)
        v.                          :
                                    :   **MEMORANDUM OPINION**
COMMISSIONER,                       :
SOCIAL SECURITY ADMINISTRATION,     :
                                    :
                Defendant.          :
_____ :

**BROWN, Chief Judge**

This matter comes before the Court upon the complaint of Plaintiff Waldo Rodriguez ("Rodriguez") that alleges Defendant the Commissioner of the Social Security Administration (the "Commissioner") erroneously denied Rodriquez's applications for benefits under the Social Security Act (the "Act"). (Compl.; Doc. No. 1.) The Commissioner has filed a brief in opposition. (Def.'s 9.1 Opp'n Br.; Doc. No. 12.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g), and has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78. Having done so, the Court will affirm the Commissioner's denial of Rodriquez's benefits applications and will order this case closed.

**I.      BACKGROUND**

On October 26, 2004, Rodriguez filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (ALJ Decision 6/1/07; A.R. p.

18.)[1] Rodriquez alleged disability as of October 21, 2004. (*Id.*) Both applications were denied on March 25, 2005, and thereafter Rodriquez timely requested a hearing. (*Id.*) The hearing took place on October 5, 2006 (the "Hearing"), before ALJ Malvin Eisenberg. At the Hearing, the ALJ heard testimony from Rodriguez and Steven H. Gumerman, Ph.D., an impartial vocational expert. (*Id.*)

Following the Hearing, on June 1, 2007, the ALJ issued his Decision that denied Rodriquez's applications for benefits. (*Id.*) In his Decision, the ALJ summarized the record in detail and found that: (1) Rodriquez met the insured status requirements of the Social Security Act through December 31, 2005; (2) Rodriquez has not engaged in substantial gainful activity since October 21, 2004, the alleged onset date; (3) Rodriguez has severe impairments, namely degenerative changes of the lumbar spine, residuals status post medial meniscectomy of the right knee, and depression; (4) that none of Rodriquez's impairments, or combination of impairments, meets or medically equals one of the listed impairments in 20 C.F.R. Part 404; and (5) that given Rodriquez's residual functional capacity ("RFC"), Rodriquez cannot perform any of his past relevant work, but there are jobs in significant numbers in the national economy that Rodriguez can perform. (*Id.* at pp. 24-35.) Based upon these findings, the ALJ concluded Rodriguez was not disabled as defined by the Social Security Act and denied Rodriquez's applications for benefits on that basis. (*Id.* at p. 36.) Rodriguez timely appealed the ALJ's Decision to the Social

---

[1] Much of the Administrative Law Judge's (the "ALJ") June 1, 2007 post-hearing decision (the "Decision") is not disputed by Rodriquez. Further, the non-disputed portions of the Decision appear to provide a thorough summary of the facts and procedural history of Rodriquez's case. As such, for the sake of economy, the Court will cite to the Decision where appropriate. Additionally, throughout this memorandum opinion, the short citation "A.R." refers to the corresponding page number in the administrative record for this case.

Security Administration Appeals Counsel, which ultimately denied Rodriquez's request for review on June 11, 2008.

Having exhausted his administrative remedies, Rodriquez timely filed his present complaint in federal district court on August 8, 2008. (Compl.; Doc. No. 1.) The case was reassigned to this Court on February 2, 2010. (Doc. No. 17.) In his brief filed pursuant to Local Civil Rule 9.1, Rodriguez argues that the ALJ's Decision is not supported by substantial evidence, and is erroneous as a matter of law for the following four reasons: (1) the ALJ erred by rejecting the well-supported opinion of Rodriguez's treating psychiatrist, Dr. N.G. Castro, M.D.; (2) the ALJ erred by rejecting the opinion of the Commissioner's consultative psychologist, Dr. Loren Laviolette; (3) the ALJ erred by relying upon an incomplete hypothetical question; (4) the ALJ erred by failing to provide a proper credibility finding. (Pl.'s 9.1 Br. at p. 1; Doc. No. 11.) Subsequently, the Commissioner filed an opposition brief pursuant to L. Civ. R. 9.1, and therein argues that all of Rodriquez's arguments fail, and that the ALJ's Decision is supported by substantial evidence and must be affirmed. (Def.'s 9.1 Opp'n Br.; Doc. No. 12.)

## II.   DISCUSSION

### A.   Legal Standard

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements. A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments

are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exist for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability. 20 C.F.R. § 404.1520 (2005). In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied. *Id.* If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). A claimant who does not have a "severe impairment" is not disabled. *Id.* Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing"). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends. *Id.*; 20 C.F.R. § 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is found capable of performing his previous work, the claimant is not disabled. *Id.* If the claimant is no longer able

to perform his prior line of work, the evaluation must continue to the last step. The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must consider the RFC assessment, together with claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(g). Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing his past work or some other type of work in the national economy because of his impairments.

The application of these standards involves shifting burdens of proof. The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits. *Id.* If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, claimant has satisfied his burden of proof and is automatically entitled to benefits. *Id.* If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents her from performing her past work." *Id.* Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why he is unable to perform such work. If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Id.* The step five analysis "can be quite fact specific." *Burnett v. Commissioner*, 220 F.3d 112, 126 (3d Cir. 2000).

**B.     Application**

### 1. The ALJ's Rejection of the Opinions of Drs. Castro and Laviolette

Rodriquez argues that the Decision is erroneous because the ALJ rejected the opinion of Dr. Castro, Rodriquez's treating psychiatrist. (Pl.'s 9.1 Br. at pp. 7-17; Doc. No. 11.) On October 2, 2006, Dr. Castro completed a medical source statement, "in which she offered a diagnosis [for Rodriquez] of a major depressive disorder resulting in extreme limitations in activities of daily living, social functioning, concentration, persistence or pace and with 4 or more episodes of decompensation." (ALJ Decision 6/1/07; A.R. p. 29.) Dr. Castro cited a multitude of symptoms Rodriguez supposedly exhibits, and opined that Rodriquez has "poor or no ability" to perform a litany of common activities. (*Id.* at 30.) During the Hearing, the ALJ posed a hypothetical question to Vocational Expert ("VE") Gumerman, and asked if, assuming Dr. Castro's opinion was accurate, there are any jobs Rodriguez could perform. (Tr. H'rg 10/5/06 pp. 56-58; A.R. pp. 570-572.) VE Gumerman responded, "no." (*Id.* at 58; 572.) The ALJ, however, rejected Dr. Castro's opinion in his Decision, and explained:

> Dr. Castro stated that her assessments were made based on clinical observations, psychiatric evaluation, and review of psychiatric records and records of the claimant's therapist. I have also carefully examined and considered the mental medical source statement of Dr. Castro. I am constrained to note that her assessments are not at all consistent with the progress notes offered from any mental health clinic – Juniata or COMHAR. I also note that based on a June 23, 2006 evaluation, Dr. Castro assessed the claimant as having a Global Assessment Functioning (GAF) score of 55. The <u>Diagnostic and Statistical Manual of Mental Disorders</u>, describes a GAF score of 55 as indicating moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or <u>moderate</u> difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Furthermore, I do not find any evidence of any post-traumatic stress disorder as Dr. Castro's medical source statement appears to imply (noting intrusive recollection of a traumatic experience).

> With all due respect to Dr. Castro, the Part "B" assessments she has offered (which includes <u>extreme</u> limitations in nearly every Part "B" category) are totally inconsistent with the treatment notes from treating sources at all mental health clinics. The claimant does no household chores but stated he never has, and therefore his activities of daily living are no different from his pre-morbid level of functioning in that regard. There have been no psychiatric hospitalizations or other episodes of decompensation of extended duration. He does have some limitations in social functioning and concentration, persistence or pace, and I concur with the reviewing psychologist that limitations in these 2 Part "B" areas are moderate. However, limitations in activities of daily living are no more than mild and there have been no episodes of decompensation, each of extended duration. Therefore, the claimant's depression, NOS is severe but does not meet or equal the requirements of Listing 12.04 A&B. Further, I find none of the Part "C" criteria addressing an affective disorder to be present.

(ALJ Decision 6/1/07; A.R. p. 30) (citations omitted).

Rodriguez argues that the ALJ's foregoing explanation for rejecting Dr. Castro's opinion is erroneous as a matter of law. (Pl.'s 9.1 Br. at pp. 7-17; Doc. No. 11.) The first line of Rodriquez's brief on this point states that, "[i]t is an error of law to reject the treating physician's opinion without an adequate explanation." (Pl.'s 9.1 Br. at p. 7; Doc. No. 11.) citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Logically, Rodriquez proceeds to argue that the ALJ's explanation for rejecting Dr. Castro's opinion is inadequate, noting that the ALJ, "'must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.'" (*Id.* at p. 15.) quoting *Burnett v. Commissioner of SSA*, 220 F.3d 112, 119 (3d Cir. 2000). Finally, Rodriquez argues that to the extent the ALJ does explain his rejection of Dr. Castro's opinion, that rejection amounts to an impermissible substitution of the ALJ's lay opinion over Dr. Castro's, and notes that, "the Third Circuit has long held, an ALJ "<u>cannot reject evidence for</u> no reason or <u>the wrong reason</u>." (*Id.* at 17.) quoting *Mason v. Shalala*, 994 F.2d

7

1058, 1066 (3d Cir. 1993) (emphasis added).

      The Court disagrees with the conclusion Rodriquez draws from his application of this case law to the ALJ's Decision.  First, the Court concludes that a simple review of the ALJ's detailed discussion of both Dr. Castro's opinion and the ALJ's reasons for rejecting it, which the Court quoted extensively above, belies Rodriquez's argument that the ALJ did not adequately explain his decision to reject Dr. Castro's opinion.  Second, the Court concludes that the ALJ amply describes the other evidence in the record that compelled him to discount Dr. Castro's opinion.  For instance, the ALJ notes that Dr. Castro's, "assessments are not at all consistent with the progress notes offered from any mental health clinic – Juniata or COMHAR."  (ALJ Decision 6/1/07; A.R. p. 30.)  Further, the ALJ notes the obvious inconsistency between the GAF score of 55 Dr. Castro gave Rodriguez on June 23, 2006, and the extreme limitations Dr. Castro noted in her October 2, 2006 medical source statement.  (*Id.*)  Lastly, the ALJ states that, "[w]ith all due respect to Dr. Castro, the Part "B" assessments she has offered (which includes <u>extreme</u> limitations in nearly every Part "B" category) are totally inconsistent with the treatment notes from treating sources at all mental health clinics."  (*Id.*)  In light of these examples, the Court finds Rodriquez's argument that the ALJ fails to give adequate reasons for discounting Dr. Castro's opinion unavailing.  Third, and finally, having reviewed the ALJ's Decision as a whole, the Court disagrees with Rodriquez's assertion that the ALJ rejects Dr. Castro's medical opinion in favor of his own lay-opinion.  Rather, the Court concludes that the Decision reflects the thoughtful synthesis of a large volume of evidence and a well-reasoned determination drawn from that evidence.  In this case, the ALJ found that Dr. Castro's opinion was not controlling and amply explained and documented that finding in his Decision.

Rodriquez also argues that the Decision is erroneous because the ALJ rejects the opinion of Dr. Loren Laviolette, a consulting psychologist who examined Rodriquez at the Commissioner's request. (Pl.'s 9.1 Br. at pp. 17-20; Doc. No. 11.)  In a medical source statement dated March 8, 2005, Dr. Laviolette opined that Rodriguez: (1) is not restricted in his ability to understand, remember and/or carry out short, simple instructions; (2) is markedly restricted in his ability to understand, remember and/or carry out detailed instructions; (3) is moderately restricted in his ability to make judgments on simple work-related decisions; (4) is extremely restricted in his ability to interact appropriately with the public; (5) is markedly restricted in his ability to interact appropriately with co-workers and supervisors; and (6) is markedly limited in his ability to respond appropriately to work pressures and changes in a routine work setting. (A.R. 406.) After so opining, in response to the query, "[w]hat medical/clinical finding(s) support this assessment?", Dr. Laviolette wrote, "back pain, knee pain, hernia." (*Id.*)  During the Hearing, the ALJ posed a hypothetical question to VE Gumerman, and asked if, assuming Dr. Laviolette's opinion was accurate, there are any jobs Rodriguez could perform. (Tr. H'rg 10/5/06 pp. 56-58; A.R. pp. 570-572.)  VE Gumerman responded, "I would say, no." (*Id.* at 56; 570.) The ALJ, however, rejected Dr. Laviolette's opinion in his Decision, and explained:

> I have considered the mental medical source statement of
> consulting psychologist Dr. Laviolette.  However, Dr. Laviolette
> states in her medical source statement that she based these
> limitations on the claimant's exertional impairments.  If that indeed
> was the basis for her opinion as offered, I do not adopt it as she
> was completing a mental medical source statement based on
> exertional impairments.

(ALJ Decision 6/1/07; A.R. p. 29) (citations omitted).

Rodriquez argues that the ALJ's rejection of Dr. Laviolette's opinion is errorneous.  The

9

Court disagrees.  The very first page of the pro forma mental medical source statement Dr. Laviolette completed states in capitalized, bold letters that, "**IT IS VERY IMPORTANT TO DESCRIBE THE FACTORS THAT SUPPORT YOUR ASSESSMENT. WE ARE REQUIRED TO CONSIDER THE EXTENT TO WHICH YOUR ASSESSMENT IS SUPPORTED.**"  (A.R. p. 405.)  Despite that, in the plainly critical area of the statement that asks "what medical/clinical finding(s) support this assessment?" Dr. Laviolette, a consulting psychologist, wrote, "back pain, knee pain, hernia."  (A.R. p. 406.)  Thus, a mental health professional completing a mental medical source statement expressly indicated that her opinion of Rodriguez's mental condition was supported by several collateral *physical* ailments.  This glaring anomaly was discussed by the ALJ at the Hearing, when he stated, "I do have to note that [Dr. Laviolette] states she's basing these mental limitations on back and knee pain, as well as a hernia, when she's asked to explain the reason for these assessments . . . that's not an appropriate use, because, since she's not a medical doctor, she's a psychologist, and was asked to comment on any mental impairment . . . ."  (Tr. H'rg 10/5/06 p. 55; A.R. pp. 569.)   The record of the Hearing indicates that Rodriquez's counsel did not refute the ALJ's foregoing remark.  (*Id.*)  Ultimately, in the Decision the ALJ did not accept Dr. Laviolette's opinion because it appeared to be improperly based upon physical, rather than mental factors.  Having reviewed the ALJ's Decision, Dr. Laviolette's mental medical source statement, and the Hearing transcript, the Court concludes that the ALJ's determination not to adopt Dr. Laviolette's opinion was entirely reasonable, and the ALJ's asserted reasons for doing so are amply supported by the evidence in the record.

    **2.**       **Rodriquez's Alternate Arguments**

Rodriquez argues that the decision is erroneous because the ALJ posed an incomplete hypothetical question to VE Gumerman at the Hearing.  (Pl.'s 9.1 Br. at pp. 20-23; Doc. No. 11.)  As previously noted, at the fifth stage of the disability analysis the Commissioner bears the burden of proving that a "claimant is able to perform work available in the national economy."  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  To carry this burden, the Commissioner normally relies in large measure upon the testimony of a vocational expert.  *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).  The Third Circuit has stated that, where the Commissioner's decision rests upon the response of a vocational expert to a hypothetical posed by the ALJ, that "hypothetical question must reflect *all* of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."  *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984) and *Wallace v. Secretary*, 722 F.2d 1150 (3d Cir. 1983)) (emphasis added).  Further, "'great specificity' is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical."  *Id.* at 554-555. (quoting *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002)).   Finally, "limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response."  *Rutherford* 399 F.3d at 554 (citing *Burns*, 312 F.3d at 123).

Applying that standard to the various hypothetical questions posed by the ALJ to VE Gumerman at the Hearing, Rodriquez's argument plainly fails.  The Court's review of the Hearing transcript yields the seemingly inescapable conclusion that the numerous hypotheticals

posed to the VE by the ALJ were thorough, and encompassed the spectrum of issues presented by the voluminous and sometimes divergent evidence in the record.  (Tr. H'rg 10/5/06 p. 55; A.R. pp. 569.)   Indeed, the ALJ posed no less than six discreet hypothetical questions to VE Gumerman, each of which presented different combinations of various pieces of evidence.  In light of the Hearing transcript, the Court finds Rodriquez's present argument unavailing, and notes that the ALJ's hypotheticals appear exemplary.

Finally, Rodriquez argues that the Decision is erroneous because the ALJ did not provide a proper explanation for his assessment of Rodriquez's credibility.  (Pl.'s 9.1 Br. at pp. 24-27; Doc. No. 11.)   In the Decision, the ALJ noted that, "[a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (ALJ Decision 6/1/07; A.R. p. 29.)  Even assuming *arguendo* that the ALJ's foregoing statement is not sufficiently detailed, Rodriquez's argument is unavailing.  At issue in this appeal is the ALJ's determination that Rodriguez's mood disorder does not render him disabled under the Act.  Rodriquez does not challenge the ALJ's Decision in any other respect.  The Court's review of the evidence in this case, including the Hearing transcript, does not reveal an instance where Rodriquez's credibility is at all relevant to the ALJ's evaluation of his mood disorder.  Indeed, in his briefs, though he recites case law, Rodriguez fails to address how the ALJ's assessment of Rodriquez's credibility has any bearing on the ALJ's Decision that Rodriquez's mood disorder is not disabling.  The Court concludes that the record in this case makes clear that the relevant evidence regarding Rodriquez's mood disorder is comprised of medical records and the

evaluations of medical professionals.  As such, Rodriquez's argument fails.

### III.     CONCLUSION

For the foregoing reasons, the Court concludes that the Commissioner's decision to deny Rodriquez's applications for benefits is supported by substantial evidence, and that all of Rodriquez's arguments to the contrary are unavailing.  As such, the Court will AFFIRM the Commissioner's final decision, and order the Clerk of the Court to CLOSE this case.

Dated: March 2, 2010

        /s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.